UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

     BARBARA E. LITTLE           CASE NO. 05-68281
     COREY A. LITTLE

                    Debtors        Chapter 13

--------------------------------------------------------
APPEARANCES:

THE CROSSMORE LAW OFFICE        EDWARD Y. CROSSMORE, ESQ.
Attorney for Morse Chair Ithaca Employees    Of Counsel
    Federal Credit Union
115 West Green Street
Ithaca, NY 14850

BODOW LAW FIRM, PLLC          THEODORE L. ARAUJO, ESQ.
Attorney for Debtors              Of Counsel
1925 Park Street
Syracuse, New York 13208

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 South Clinton Street
Syracuse, NY 13202

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Before the Court is an objection filed by Morse Chain Ithaca Employees Federal Credit Union ("Morse Chain") on December 1, 2005, objecting to Barbara and Corey Little's (the "Debtors") chapter 13 Plan because it allegedly fails to comply with § 1325(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code"). The Debtors filed a response in opposition to the objection on December 23, 2005.

2

The Court heard the objection on February 14, 2006, at its regular motion term in Binghamton, New York, and then adjourned the objection to the March 14, 2006 motion term. The Court permitted the parties to file supplemental memoranda of law by February 21, 2006. Upon conclusion of the March 14th oral argument, the Court reserved decision on the objection.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), and 157(b)(2)(B).

## FACTS

On August 30, 2005, New York amended Civil Practice Law & Rules ("CPLR") § 5206(a) to increase the homestead exemption available to an individual judgment debtor from $10,000 to $50,000. The Debtors filed a chapter 13 bankruptcy petition and plan on September 21, 2005. In the schedules accompanying their petition, Debtor Barbara E. Little claimed a $20,000 homestead exemption in real property owned solely by her. In their Schedule D, the Debtors listed Morse Chain as a secured creditor with security interests in two motor vehicles and a motorcycle owned by the Debtors.[1] The Debtors also listed Morse Chain's unsecured portion

---

[1]On December 12, 2005, the Court granted Morse Chain's unopposed motion for relief from the automatic stay so as to permit Morse Chain to enforce its security interest on Corey Little's motorcycle. The Court also ordered the abandonment of the Trustee's interest in the motorcycle pursuant to Code § 544(b).

3

of its secured claim as $2,567.50.  In their Schedule F, the Debtors listed Morse Chain as holding

nine unsecured claims in an unknown amount.  However, the Debtors noted that they believed

the claims to be duplicates.  The Debtors' plan, filed on the same date as the petition, provided

that the Debtors would pay the chapter 13 Trustee a total of $29,840, at the rate of $200 per

month for one month, then $570 per month for 52 months.  The plan payments would result in

a dividend to unsecured creditors of 10¢ on the dollar.


## ARGUMENTS


Morse Chain objects to the plan because it allegedly violates Code § 1325(a)(4)'s "best

interests of creditors" requirement, which mandates that a debtor's plan provide the unsecured

creditors with at least as much of a distribution as they would receive in a hypothetical chapter

7 liquidation.  Morse Chain argues that Barbara Little's homestead exemption is limited to

$10,000 because the 2005 amendment to CPLR § 5206(a) does not apply retroactively to a debt

incurred before the amendment's enactment date.  Thus, in a chapter 7, the trustee would sell the

homestead, allow Barbara Little a $10,000 exemption and distribute the equity balance to the

unsecured creditors.  Morse Chain contends that, in New York, statutes are not applied

retroactively in the absence of an unequivocal expression of legislative intent, and because there

is no expression of legislative intent to apply the amended exemption retroactively, the Debtors'

homestead exemption is limited to $10,000.  Morse Chain also asserts that if the $50,000

exemption amount is applied retroactively, the Court should strike it down as being in

contravention of Article 1, Section 10 of the U.S. Constitution (the Contract Clause).

4

The Debtors argue that the vast majority of federal courts have held that federal law preempts state exemption laws that either deny debtors homestead protection or impose other limitations on the state exemption laws' application in bankruptcy. The Debtors assert that the Court should apply the law in effect at the time they filed their bankruptcy petition. They point out that there is no general statute in New York that prohibits the retroactive application of a statute and that New York has no state constitutional provision that prohibits a statute's retroactive application. The Debtors also argue that while the new homestead exemption amount modifies the parties' expectations, it does not substantially impair the parties' contractual relationship, and, thus, does not violate the Constitution's Contract Clause. Furthermore, the Debtors contend that any impairment of Morse Chain's rights is not unreasonable in light of the important public policy of providing the Debtors with a fresh start. According to the Debtors, a court should construe a remedial law, such as an increase in the homestead exemption, in favor of the Debtors because they are the intended beneficiaries. The Debtors conclude, with the request, that if the Court refuses to apply the amended state exemption, then it should apply the existing federal exemption amount. The Debtors argue that although there is no constitutional right to an exemption, once the federal government established an exemption amount, Code § 522(b) cannot be used to allow the states to establish an exemption amount less than the federal standard.

**DISCUSSION**

The commencement of a bankruptcy case creates an "estate" that is initially comprised

5

of all the equitable or legal interests of the debtor in property. *Code § 541.* In a chapter 7 case, the trustee collects, liquidates, and distributes the estate to the creditors. *Code § § 704, 726.* In a chapter 11, 12, or 13 reorganization case, the court analyzes the estate to determine whether the debtor's reorganization plan provides the interested parties with as much as they would receive in a chapter 7 liquidation. *Code § §1129(a)(7), 1225(a)(4), 1325(a)(4).* This is referred to as the "best interests of creditors" test because a reorganization plan is not in the creditors' best interests if those same creditors would receive more in a chapter 7 liquidation. *Charles Jordan Tabb*, *The Law of Bankruptcy* 273 (The Foundation Press, Inc. 1997).

Under Code § 522(b), a debtor may be able to exempt property which allows the debtor to withdraw that property from property of the estate. This prevents the property from being used to pay debts through the bankruptcy case, as well as preventing most creditors from enforcing their claims through nonbankruptcy collection actions. *See In re Fishman,* 241 B.R. 568, 574 (Bankr. N.D. Ill. 1999). Exempt property loses its protection if a bankruptcy case is dismissed, however. Moreover, under Code § 522(c)(1) - (4), the following debts may be enforced against exempt property: (1) nondischargeable debts for taxes, custom duties, alimony, maintenance, and child support ; (2) debts secured by valid liens that may not be avoided under the trustee's powers and debts secured by tax liens, if notice is properly filed; (3) certain nondischargeable debts for fraud and willful injury owed to a Federal depository institutions regulatory agency acting as a conservator, receiver, or liquidating agent; and (4) a debt in connection with fraud in the obtaining or providing of financial assistance for purposes of financing an education at an institution of higher education. *See, e.g., In re Davis*, 170 F.3d 475, 484 (5th Cir. 1999); *In re Fishman*, 241 B.R. at 574.

Exemptions prevent a debtor from losing everything.  They also promote a debtor's fresh start after the bankruptcy discharge because the debtor will be able to use the exempt property to aid in financial rehabilitation.  *See Marine Midland Bank v. Scarpino* (*In re Scarpino*), 113 F.3d 338, 340 (2d Cir. 1997).  While exemptions serve a laudable purpose, they are controversial because they spark accusations that debtors are shielding property from debts they can afford to pay.  The Fifth Circuit explained that "[e]xemptions have been perennially controversial, because they reduce assets potentially available to pay creditors and arouse charges of abuse of bankruptcy.  Exemptions are also fought over by states'-rights advocates, who value the traditional state legislative prerogative to adjust exemptions to local economic conditions, and by advocates of federal uniformity, who want to raise-or lower-exemptions based on conceptions of national equity." *In re Davis*, 170 F.3d at 478.

Code § 522(b) gives three choices in providing exemptions to debtors domiciled in their state:  (1) allow debtors to use the federal exemptions listed in Code § 522(d); (2) allow debtors to only exempt (i) property that is exempt under "Federal law" other than that listed in Code § 522(d) and (ii) any property that is exempt under the state or local law of the debtors' domicile; and (3) allow debtors the choice of using either the § 522(d) federal exemptions or the state exemptions.  The State of New York has selected the second option.  Pursuant to Code § 522(b)(1), New York has "opted out" of the federal exemption scheme, choosing instead to provide its own exclusive set of permissible exemptions in bankruptcy for debtors domiciled in the state.  *In re Nudo*, 147 B.R. 68, 70 (Bankr. N.D.N.Y. 1992) (citing New York Debtor and Creditor Law ("NYD & CL") §§ 282 and 284).  Thus, because the Debtors are domiciled in New York, they may only use the exemptions listed in NYD & CL § 282. NYD & CL § 282

specifically incorporates the CPLR § 5206(a) homestead exemption as a permissible bankruptcy exemption. Code § 522(b)(2)(A) also requires the Court to apply the New York state law that is applicable on the September 21, 2005, filing date of the bankruptcy petition.

This Court must address two issues in ruling on Morse Chain's objection: (1) Morse Chain's standing as an unsecured creditor in objecting to the Debtors' Plan, and (2) whether Barbara Little is entitled to exempt only $10,000 of equity in her homestead from creditors whose claims were incurred before the enactment of the 2005 amendment to CPLR 5206(a).

Code §§ 522(l) and 1324 permit a "party in interest" to object to confirmation of a plan and to object to a debtor's claimed exemptions. This Court agrees with the reasoning in *In re Turpen,* 218 B.R. 908, 911 (Bankr. N.D. Iowa 1998), which provided that:

> The term "party in interest" is not defined by the Code. Section 1109 of the Code, although not applicable in Chapter 13, provides helpful guidance in determining who is a party in interest. It indicates that a "party in interest" includes a creditor. 11 U.S.C. § 1109(b). A creditor is an entity that has a claim against the debtor or the estate. 11 U.S.C. § 101(10). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ."11 U.S.C. § 101(5).

*See also Armstrong v. Rushton* (*In re Armstrong*), 303 B.R. 213, 219 (B.A.P. 10th Cir. 2004) (holding that the phrase "party in interest" means all persons whose pecuniary interests are directly affected by the bankruptcy proceedings and includes anyone who has an interest in the property to be administered and distributed under the chapter 13 plan); *In re Barnes*, 275 B.R. 889, 892-93 (Bankr. E.D. Cal. 2002) (declaring that the term "party in interest" is broad enough to include anyone whose financial interest may be affected by the outcome of a bankruptcy case). Here, Morse Chain is objecting to the Debtors' Plan under the best interests of creditors test

8

because it will arguably be collecting less money on its unsecured claims under the chapter 13 plan than it would receive in a chapter 7 liquidation case.  Morse Chain's unsecured status is based on the following five proofs of claims it filed: (1) $7,167.78 unsecured claim for money loaned on February 18, 2004; (2) $1,381.89 unsecured claim for money loaned on June 2, 2004; (3) $2,478.59 unsecured claim for money loaned on October 9, 2003; and (4) a $2,233.92 unsecured portion of a $8,996.42 claim for a loan made on June 28, 2002.[2]  Barbara Little is asserting a $20,000 homestead exemption in her chapter 13 case, but Morse Chain contends that if the Debtors were in a chapter 7, she would only be entitled to a $10,000 homestead exemption.[3]  Although this is a roundabout way of making a Code § 522(l) objection to the Debtors' claimed exemption, the Court finds that Morse Chain has standing to make the objection because it is a "party in interest" whose pecuniary interests are directly affected by the bankruptcy proceedings.

The divisive issue in this case is what exemption limit to apply: $10,000 or $50,000.  The bankruptcy court in *In re Larson*, 260 B.R. 174, 198 (Bankr. D. Colo. 2001), explained that courts have divided into two camps on the issue of whether or not amendments to exemption statutes apply to debts incurred before the enactment of the amendment.

Some courts hold that debtors are limited to the applicable exemptions at the time loans are made.  *Id.*  For example, in *In re Sticha*, 60 B.R. 717, 719 (Bankr. D. Minn. 1986), the court declared "that parties to a secured transaction are entitled to rely upon the law in existence at the time of the transaction regarding interests in property that are determined by it."  The court held

---

[2]Morse Chain filed five proof of claims in total.  The fifth claim is a $4,486.44 secured claim for a loan made on November 15, 2002

[3]According to the Debtors' Schedule A, only the Debtor Barbara Little owns any interest in the Debtors' residence, located at 308 Asbury Road, Freeville, Tompkins County, New York.

that the application of an exemption through Code § 522(f) to avoid a lien that existed before the exemption statute's enactment would constitute a retroactive, unconstitutional application of § 522(f). Although Minnesota increased its exemption for farm equipment from $5,000 to $10,000 three and a half months before the debtors filed for bankruptcy, the court ruled that the debtors were only entitled to avoid the bank's lien to the extent the lien was avoidable at the time of its creation. *Id.*

In *In re Halub*, 25 B.R. 617, 620 (Bankr. C.D. Cal. 1982), the court did not apply a new exemption amendment because it concluded that California law required that a debtor be allowed the homestead exemption in effect at the time debts arose, rather than the homestead exemption in effect at the time of filing. The court cited to *In re Bassin*, 637 F.2d 668, 670 (9th Cir. 1980), which held that when considering a state law applicable in a bankruptcy proceeding, a court must look both to the particular statute and to the construction placed on that statute by authoritative courts. In *In re Bassin*, the Ninth Circuit followed the holding by a California intermediate court of review in *In re Rauer's Collection Co.*, 196 P.2d 803, 806-07 (1948), which held that it would apply the increase in California's homestead exemption prospectively only because: (1) it is settled that statutes are construed to operate prospectively unless the legislative intent to the contrary is clearly expressed; and (2) even if a retroactive intent can be found in the statute, the application of the new exemption would impair the obligation of pre-existing contracts, as a creditor is entitled to rely upon the exemption statute in effect at the time the obligation was incurred. The California court explained that the remedy is inseparable from the contract itself, and contracts not reduced to judgment are held to be substantially impaired by the authorization of a new or increased exemption. *Id.* at 807. In *In re Halub*, 25 B.R. at 620, the court found that

10

only one of the debtor's debts preceded the homestead increase to $30,000 from $20,000. The court then allowed the $30,000 exception minus this one debt, which gave the debtor a $28,965.85 homestead exemption. *Id.*

However, in *In re Seltzer*, 104 F.3d 234, 236 (9th Cir. 1996), the Ninth Circuit cited *In re Bassin* and several other of its decisions, all decided before the Supreme Court issued *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983), as not giving appropriate deference to legislative judgments. The Supreme Court in *Energy Reserves*, 459 U.S. at 412-13, had ruled that "[u]nless the State itself is a contracting party . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." The Ninth Circuit noted that the Supreme Court had retreated from its earlier decisions and had indicated a renewed willingness to defer to the decisions of state legislatures regarding the impairment of private contracts. *Id.* The Ninth Circuit concluded that the retroactive application of Nevada's $100,000 exemption for IRA (individual retirement account) funds did not violate the U.S. Constitution's Contract Clause when applied to creditors whose contractual claims arose before the statute's effective date. *In re Seltzer*, 104 F.3d at 237. But it is important to note that *Seltzer* examined Nevada law, and *In re Halub* is still good law to the extent it applies to California law. Just because the retroactive application of a statute does not violate the Constitution's prohibition of the impairment of contract obligations does not mean it should be applied retroactively. As the court *In re Rauer's Collection*, 196 P.2d at 806, pointed out, California statutes are construed to operate prospectively unless the legislative intent to the contrary is clearly expressed.

In *First National Bank of Mobile v. Norris*, 701 F.2d 902, 905 (11th Cir. 1983), the Eleventh Circuit asked itself what property was exempt under Alabama law on the bankruptcy

11

petition filing date.  It held that the law applicable on that date included an Alabama statute that

declared that a homestead exemption is governed by the law in force when the debt or demand

was created.  The Eleventh Circuit concluded that the debtors were limited to the homestead

exemption amount in effect at the time the debt was incurred, even though the debtors filed for

bankruptcy after the enactment of an increased exemption amount.  *Id.*  The Eleventh Circuit

held that "[n]othing in § 522 suggests that the state cannot determine exemptions according to

the date debts were incurred, i.e. allow different amounts for the exemption fixed by the date of

debts, if that is the state law at the time the petition is filed."  *Id.*

In *In re Duda*, 182 B.R. 662, 665 (Bankr. D. Conn. 1995), *aff'd sub nom. Gernat v.*

*Belford*, 192 B.R. 601 (D. Conn. 1996), *aff'd Gernat v. Belford* (*In re Gernat*), 98 F.3d 729 (2d.

Cir. 1996), the bankruptcy court noted that under Connecticut law, a statutory enactment affecting

substantive rights is presumed to have only prospective effect in the absence of a clear and

unequivocal expression of a contrary legislative intent.  The Connecticut state legislature had

amended the state's exemption laws to provide for a $75,000 exemption, which took effect on

October 1, 1993, and was "applicable to any lien for any obligation or claim arising on or after

said date."  *Id.* at 664 (citing *Connecticut Public Act No. 93-310 , § 3* (Oct. 1, 1993)).  The court

held that a debtor may not claim the $75,000 exemption when the case was commenced after the

statute's effective date and the debtor's creditors incurred their claims before that effective date.

While stating that § 522(b)(2)(a) permits the debtor to claim as exempt property that which is

exempt under applicable state law, the court noted that § 522(b)(2)(a) requires that applicable

state law provide the definition of "exempt."  *Id.* at 667.  The court ruled that the property was

not exempt because the state's definition of "exempt" does not include judicial liens that arose

12

before October 1, 1993. While citing *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242 (1989), for the principle that the plain meaning of legislation should be conclusive (except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the drafters' intentions), the court declared that the ultimate goal of statutory construction is to discern legislative intent. *Id.* at 668. The court examined a statement on the floor of Connecticut's House of Representatives by the exemption amendment's sponsor, and found that the legislative intent was that it would not be retroactive. The court ruled that while federal law governs the avoidance of judicial liens pursuant to § 522(f), as outlined in *Owen v. Owen*, 500 U.S. 305 (1991), state law determines the availability of exemptions in the first instance when the state has opted out of the federal exemption scheme. *Id.* at 670. The court adopted a prior Connecticut bankruptcy court's method of calculating the exemption amount where all or some of the claims predate the October 1, 1993 amendment date: under this method, the debtors were entitled to the exemption amount allowed by the exemption statute in effect as of the commencement of the case, minus the aggregate of all claims pre-dating the amendment (including unsecured claims), with the aggregate limited to the amount of the increase in the exemption. *Id.* at 667 n.5, 672 (citing *In re Morzella*, 171 B.R. 485, 489 (Bankr. D. Conn. 1994)).

Other courts permit debtors to use the exemptions in effect on the filing date, regardless of when the exemptions laws were enacted. *In re Larson*, 260 B.R. at 198. One example is *In re Skjetne*, 213 B.R. 274, 275 (Bankr. D. Vt. 1997). In that case, the debtors filed for bankruptcy seven days after the Vermont legislature had increased the homestead exemption from $30,000 to $75,000, which was effective immediately. However, a Vermont general statutory rule of construction barred retroactive application of the homestead amendment. *See 1 V.S.A. § 214(b).*

13

The court held that while the state law limited the increased exemption to debts incurred after its effective date, bankruptcy law expands the exemption to all prepetition debt.  The reason for this, the court explained, was that debtors are permitted to exempt from property of the estate "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition . . . ."  *Id.* at 278 (quoting § 522(b)(2)(A)).  As the increased exemption was applicable on the debtors' petition filing date, the court ruled that the exemption was available and validly claimed.  The court declared that the difficult question is whether Code § 522(b)(2)(A) required that the debtor actually be entitled to the exemption, or whether the section referred to a list of exemptions generally available.  The court decided that if it read into the section the requirement that the debtor actually be entitled to the exemption, then the court would be plagued with painfully obtaining detailed information on revolving charge accounts and having the impossible task of ascertaining what debt was incurred before and after the homestead amendment's effective date.  *Id.*  (citing *In re Whalen-Griffin*, 206 B.R. 277, 280 (Bankr. D. Mass. 1997)).  The court concluded that Code § 522(b)(2)(A) does not require that a debtor actually be entitled to a particular exemption, but instead defines what types of property can be exempted from property of the estate.  The court explained that the effect of exempting property from the bankruptcy estate is defined by Code § 522(c), which provides that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . ."  In conclusion, the court declared that its construction of Code § 522(c) gave bankruptcy debtors more benefit from the exemption than they would obtain in state court proceedings, but that this result was in harmony with the Supreme Court's holding in *Owen* because *Owen* also gave bankruptcy debtors more benefit from a state

14

exemption than they would obtain in state court proceedings. *Id.*

In *Owen*, 500 U.S. at 313-14, the Supreme Court held that Code § 522(f) permitted the avoidance of a judicial lien that impaired a homestead exemption, even though the lien predated the time that the property became the debtor's homestead, and, so, would not have been subject to the homestead exemption under Florida law. The Supreme Court established a hypothetical test for determining whether a judicial lien impairs an exemption: if avoiding the lien would entitle the debtor to claim the exemption, then avoid the lien under Code § 522(f)(1). *Id.* at 311. The first step under the *Owen* analysis is to determine whether, ignoring the particular lien in question, the debtor is entitled to an exemption under §§ 522(b)(1) and 522(d) or under § 522(b)(2)(A). *Id.* at 314 n.6. Adopting the holdings of lower federal courts that had applied § 522(f)(1) to the federal exemptions, the Supreme Court refused to treat state-law bankruptcy exemptions under § 522(b)(2)(A) differently from those under § 522(d). *Id.* at 313. The Supreme Court rejected the notion that bankruptcy debtors must accept state-law bankruptcy exemptions "with all their built-in limitations," and held that it was not inconsistent for Congress to recognize state-law exemptions in bankruptcy while also "disfavoring the impingement of certain types of liens upon exemptions, whether federal - or state-created." *Id.* The second step under the *Owen* analysis is to determine the extent to which the lien may be avoided. *David Dorsey Distrib., Inc. v. Sanders* (*In re Sanders*), 39 F.3d 258, 261 (10th Cir. 1994). The third step is to determine whether the lien actually impairs the exemption. *Id.*[4] Code § 522(f)(2)

_____

[4] On remand, the Eleventh Circuit held that the debtor in *Owen* could not avoid his ex-wife's judicial lien on his homestead under § 522(f)(1). The court noted that in *Farrey v. Sanderfoot*, 500 U.S. 291, 293, 299-300 (1991), the Supreme Court held that held that § 522(f)(1) "requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." The Eleventh Circuit explained that the ex-wife's

15

In *In re Euber*, 217 B.R. 448, 451 (Bankr. D. Vt. 1998), the court declared that "in bankruptcy, it matters not one whit whether the Creditor's claim arose before the Debtors' homestead was established. All that matters is that Vermont law provided for a homestead exemption at the time Debtors filed." As in *Skjetne*, on the date the debtors filed for bankruptcy, Vermont law provided a $75,000 homestead exemption. The court followed its reasoning in *Skjetne*, and ruled that § 522(b)(2)(A) entitled the debtors to exempt that amount from property of the estate. Unlike in *Skjetne*, where the trustee objected to the increased exemption on behalf of unsecured creditors, the creditor in *Euber* perfected his judgment lien before the effective date of the increase of the homestead exemption. Having determined that the debtors were entitled to the new homestead exemption amount, the court followed *Owen* and asked itself if avoiding the creditor's lien would entitle the debtor to an exemption, and if it would, then it would avoid the lien. The court concluded that avoiding the creditor's lien would entitle the debtors to a homestead exemption, and so avoided the lien. *Id.* at 451-452.

In *In re Zahn*, 605 F.2d 323, 324 (1979), the debtors filed for bankruptcy a year and a half after Wisconsin had amended its homestead exemption to increase the exemption from $10,000 to $25,000. The trustee claimed that the debtors could not assert the $25,000 exemption against creditors who had extended credit prior to the amended homestead exemption date. The Seventh Circuit held that the debtors were entitled to the $25,000 exemption because it was the allowable exemption amount under the relevant state exemption statute under the Bankruptcy Act in effect

judgment was recorded in 1976, and the debtor acquired the property in 1984, which meant that "there was never a fixing of a lien on an interest of the debtor, as the debtor had no property interest prior to the fixing of the lien." *Owen v. Owen* (*In re Owen*), 961 F.2d 170, 172 (11th Cir. 1992), *aff'g per curiam Owen v. Owen* (*In re Owen*), 86 B.R. 691 (M.D. Fla. 1988). Thus, the debtor's property was "never exempt from foreclosure of this lien." *Id.*

on the bankruptcy filing date.  *Id.* at 324.  The Seventh Circuit held that a debtor's property and the extent of available exemption rights must be determined at one common point in time, which was the bankruptcy filing date.  *Id.* at 327 (citing to *White v. Stump*, 266 U.S. 310 (1924), which did not permit a debtor to claim a homestead exemption by filing the required homestead declaration after he had already filed for bankruptcy).

In *Bartlett v. Giguere*, (*In re Bartlett*), 168 B.R. 488,  493-94 (D.N.H. 1994), the district court noted that the Bankruptcy Code has a rehabilitative goal and that it is to be liberally construed in the debtor's favor.  For the court, this meant that a remedial law, such as an increase in a homestead exemption, which is designed to implement an important social policy, should be construed in favor of its intended beneficiary (the debtor).  *Id.*  The court held that Congress created the state exemption by enacting Code § 522. *Id.* at 494.  The court stated that "[i]t is true that Congress has in effect legislated that the states may elect to have the exemption defined by their own exemption laws but this is simply an incorporation by reference by the Congress to pick up the terms of any existing exemption laws in 'opt-out' states, including any future changes in those laws."  *Id.*  According to the court, the exemption right was created by federal law, even though the state defined the amount and items of exemption.  *Id.*  The court declared that the idea of presenting the issue as to whether the new exemption can be applied retroactively was a red herring.  The court explained, that even though a creditor with an attachment or other judicial lien may have had an "existing right" to move against a debtor's collateral subject only to a $5,000 exemption at the time the non-consensual lien was obtained, that right carried an obligation to assert and enforce that right promptly under the existing statutory provisions, in view of the knowledge that homestead exemption laws are periodically updated and changed. *Id.* at 495.  The

17

court concluded that the creditors' rights were not taken away from them when New Hampshire increased its homestead exemption to $30,000 from $5,000; instead, the creditors lost their rights by their own inaction. *Id.* at 496.

In *In re Betz*, 273 B.R. 313, 315 (Bankr. D. Mass. 2002), the debtors moved to avoid a judicial lien because they claimed it impaired their $300,000 homestead exemption. Massachusetts had amended its homestead exemption statute by increasing the exemption to $300,000 from $100,000. The amendment was effective November 2, 2000, but the amendment subordinated the increased exemption to any lien, right, or interest recorded or filed before the effective date. The court declared that the issue in the case revolved around the first step in *Owen*: whether the debtor is entitled to an exemption. *Id.* at 320-321. The court held that in determining what property is exempt under § 522(b)(2) and (c), it must look to the law in effect at the time of the bankruptcy filing, notwithstanding the limitations set forth in the homestead statute. The court found that § 522(c) does not provide that preexisting debts or liens receive special protection under the Code. It concluded that the homestead statute's subordinating clause conflicted with § 522(c) and had no effect on the bankruptcy proceeding. This meant that the debtors were entitled to the $300,000 exemption. *Id.* at 325. In reaching its conclusion, the court followed the holding of *Patriot Portfolio, LLC v. Weinstein* (*In re Weinstein*), 164 F.3d 677 (1st Cir. 1999), which had resolved a split within the District of Massachusetts on the question of whether the Code preempts the Massachusetts homestead statute's exception for preexisting debts. *Id.* at 322.

In *Weinstein*, 164 F.3d at 679, the Massachusetts homestead law had provided a general exemption for a debtor's "estate of homestead," but also provided: (1) that this estate only came

into existence upon the recording of a declaration by the owner of the homestead property; and

(2) that the exemption was inapplicable to a number of claims, including "debts contracted prior

to the acquisition of the estate of homestead." Four years after a creditor had recorded a judgment

lien on the debtor's property, the debtor recorded a Declaration of Homestead. The debtor then

filed for bankruptcy and claimed $55,000 in his residence as exempt pursuant to the

Massachusetts homestead statute. However, that statute did not provide the debtor with an

exemption vis-a-vis the creditor's claim because the debtor acquired his homestead estate after

the creditor had recorded its lien. Citing to *Owen* and *Sanderfoot*, the First Circuit declared that

a debtor must meet two requirements before a court avoids a lien under § 522(f): "(1) the debtor

must have had an ownership interest in the property before the lien attached; and (2) avoidance

of the lien must entitle the debtor to a state or federal exemption." *Id.* at 680. In reviewing

whether avoiding the creditor's lien entitled the debtor to a state exemption, the First Circuit held

that Code § 522(c) preempts the Massachusetts homestead statute, with the result that the debtor

could exempt his home and avoid the lien. The First Circuit reasoned that exempt property loses

its exempt status in bankruptcy only with respect to the types of debts enumerated in the

subparagraphs of § 522(c), and because the Massachusetts prior contracted debt exception was

not included in § 522(c), it was preempted. *See id.* at 682-83. In conclusion, the First Circuit

held that the bankruptcy court properly followed *Owen* by avoiding the creditor's lien. *Id.* at 684.

*In re Ondras*, 846 F.2d 33 (7th Cir. 1988), took a contrary approach to *Weinstein*. In

*Ondras*, Indiana's exemption statute limited its exemption to debts "growing out of or founded

upon a contract, express or implied." *Id.* at 34. The Seventh Circuit ruled that the debtor could

not exempt his property from the reach of a creditor holding a tort claim because Indiana's

exemption law only applied to property that was not subject to tort claims.  The Seventh Circuit stated that "[w]e cannot say, however, that, in enacting the compromise provision of section 522, Congress was unaware that its handiwork would give the states such flexibility with respect to exemptions . . . the Indiana provision had been in force for a century. Furthermore, Indiana had hardly been alone in utilizing such provisions."

In following *Ondras*, Judge Eugene R. Wedoff criticized *Weinstein* in *In re Fishman*, 241 B.R. at 573.  He noted that § 522(b) reflected a compromise between conflicting legislative provisions, with the apparent intent of allowing states to retain wide discretion over the exemptions applicable in bankruptcy.  *Id.*  He continued by stating that "[i]t would not be consistent with this intent to simply ignore all state limitations on the scope of exemptions, with the effect of transforming any state exemption, regardless of how limited the range of claims to which it applied, into an exemption applicable to all claims."  Exposing the weakness of the Weinstein approach with an extreme example, Judge Wedoff explained that "if a state law provided that all real property of a debtor was exempt against library fines, the Weinstein approach would apparently result in a holding (1) that all real property of the debtor was exempt under § 522(b)(2), and (2) that the state law excluding claims other than library fines from the scope of the exemption would be preempted by § 522(c)."  *Id.*

As required by Code § 522(b)(2), this Court must look to the state law that was applicable on the date of the filing of the petition. CPLR § 5206 (a) provides that:

a) Exemption of homestead. Property of one of the following types, not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:
1. a lot of land with a dwelling thereon,

2. shares of stock in a cooperative apartment corporation,
3. units of a condominium apartment, or
4. a mobile home.

But no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments.

The 1977 amendment to CPLR § 5206(a) provided that, "[t]his act shall take effect ninety days after it shall have become a law [August 22, 1977], but shall not affect the application of property to the satisfaction of a money judgment for a debt contracted before it takes effect." However, there is no mention in the 2005 amendment about whether its application is limited retroactively. Federal courts have reviewed the 1977 homestead amendment, and they ruled that the date the underlying contractual debt is executed is the determining factor in regard to whether the new or old state exemption amounts apply. *Lattimore v. Walt's Tree Serv., Inc.* (*In re Lattimore*), 12 B.R. 111 (W.D.N.Y. 1981); *In re Ventura*, 65 B.R. 29, 30 (Bankr. N.D.N.Y. 1986); *In re Eipp*, 66 B.R. 1, 2 (Bankr. N.D.N.Y. 1984). In New York, the Court of Appeals ruled that it is a "settled principle that a statute will not - in the absence of an unequivocal expression of such legislative intent - be given retrospective effect so as to interfere with antecedent rights." *Western N. Y. & P. Ry. Co. v. City of Buffalo*, 71 N.E.2d 108 (N.Y. 1947). *See also Deutsch v. Catherwood*, 294 N.E.2d 193, 194 (1973); *Jacobus v. Colgate*, 111 N.E. 837 (1916). McKinney's Statutes § 52 further provides that "[g]enerally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation."

The Court has reviewed both the 2005 CPLR § 5206(a) amendment and the amendment's bill jacket, but finds no indication that courts are to apply the amendment retroactively. New York law provides, however, that courts may give a statute retroactive effect if it is remedial.

McKinney's Statutes § 54 declares that "[r]emedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights." In *Jacobus*, the Court of Appeals described the exception by stating that "[i]t takes a clear expression of the legislative purpose to justify a retroactive application. Changes of procedure -- i.e., of the form of remedies -- are said to constitute an exception (citation omitted), but that exception does not reach a case where before the statute there was no remedy whatever (citation omitted)." When the amended law "is procedural and remedial in nature it should be liberally construed to spread its beneficial effects as widely as possible." *Post v. 120 E. End Ave. Corp.*, 464 N.E.2d 125, 127 (1984).

This then begs the question as to what exactly is a "remedial" statute. William Blackstone explained that:

> Statutes also are either declaratory of the common law, or remedial of some defects therein. Declaratory, where the old custom of the kingdom is almost fallen into disuse, or become disputable; in which case the parliament has thought proper, in perpetuum rei testimonium, and for avoiding all doubts and difficulties, to declare what the common law is and ever hath been . . . Remedial Statutes are those which are made to supply such defects, and abridge such superfluities in the common law as arise either from the general imperfection of all human laws, from change of time and circumstances, from the mistakes and unadvised determination of unlearned (or even learned) Judges, or from other cause whatsoever.

*1 Commentaries \*86.* In *American Historical Soc. v. Glenn*, 162 N.E. 481, 482-83 (1928), the Court of Appeals quoted *William Blackstone*, *1 Commentaries \*87,* as follows:

> There are three points to be considered in the construction of all remedial statutes: The old law, the mischief, and the remedy; that is, how the common law stood at the making of the act, what the mischief was, for which the common law did not provide, and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy.

22

Remedial statutes are designed to correct imperfections in prior law by generally giving relief to the aggrieved party. *Asman v. Ambach*, 478 N.E.2d 182, 184 (1985); *Coffman v. Coffman*, 400 N.Y.S.2d 833, 837 (N.Y. App. Div. 1977). Here, the mischief the New York legislature sought to remedy in enacting the homestead exemption was that under common law debtors could lose their homes to creditors executing a money judgment. The common law did not provide debtors with a homestead exemption, and to remedy the effect of the harsh common law rule, ultimately, New York enacted CPLR § 5206(a). *See Gernat*, 192 B.R. at 604 (declaring that "[h]omestead exemptions are purely creatures of statute, being unknown at common law"). The Court, therefore, finds that the 2005 amendment to CPLR § 5206(a) is remedial. *See Wilcox v. Hawley*, 31 N.Y. 648, 658 (1864) (court reviewed a statute exempting a team of horses from the satisfaction of a money judgment, and held that "under a liberal interpretation of this remedial statute," one horse may constitute a team); *Smith v. Slade*, 57 Barb. 637 (N.Y. Sup. Ct. 1870) (declaring that the personal property exemption statute was a "remedial statute, enacted for the benefit of families, and it is the duty of courts to see to it that its humane provisions shall not be defeated by technicalities"). *See also Mayer v. Nguyen* (*In re Nguyen*), 211 F.3d 105, 112 (4th Cir. 2004) (referring to the "remedial purposes of the [Virginia] homestead exemption and the rule that the exemption statutes should be construed liberally in favor of the debtor"); *Mirgon v. Howell* (*In re Howell*), 638 F.2d 81, 83 (9th Cir. 1980) (holding that California courts have ruled that the homestead statutes are remedial and should be liberally construed); *In re Parrotte*, 22 F.3d 472, 474 (maintaining that Vermont courts have long held that exemption statutes are remedial in nature and "ought to receive a liberal construction in favor of the debtor"); *Eagan v. Household Finance Corp.* (*In re Eagan*), 16 B.R. 439, 441 (Bankr. N.D.N.Y. 1982) (referring to

the Code and declaring that "[b]eing a remedial statute, the exemption provisions of the Code should be liberally construed").

Following McKinney's Statutes § 54, the next step for the Court is to determine whether the retroactive operation of the 2005 amendment to CPLR § 5206(a) impairs vested rights in the instant case.  Morse Chain cites to a New York Court of Appeals case, *Addis v. Selig*, 190 N.E. 490, 492 (1934) as providing that the right of a creditor to pursue the property of a debtor to collect on a claim  is considered a substantive right.  However, there is an important distinction between *Addis* and the present case.  In *Addis*, the court reviewed New York Insurance Law § 55-a, which, *inter alia*, allowed a wife to receive her husband's life insurance policy free from her husband's creditors' claims.  The court ruled that the statute did not give a beneficiary immunity against claims which were in existence before the statute took effect.  Prior to New York Insurance Law § 55-a's enactment, the Domestic Relations Law provided that a wife was entitled to receive her husband's insurance policy free from her husband's creditors' claims, but only when the annually paid premium was $500 or less.  If the premium was over $500, her husband's creditors could claim the portion of the insurance money that was purchased by the "excess of premium above five hundred dollars."  The court declared that the creditors' right to insurance purchased by excess premiums was "one of substance," which "could not be divested without due process of law or impaired by State legislation" and that the "remedy was a material part of the contract."  *Id.* at 278.  In *Addis*, however, the state law (New York Insurance Law § 55-a) created a new right of action.  New York law provides that when the effect of the statute is to create a right of action which did not previously exist, it is presumed that the legislature intended the statute to apply prospectively only.  *Deutsch v. Catherwood*, 294 N.E.2d at 195;

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke,* 209 N.E.2d 68, 73 (1965); *Jacobus*, 111 N.E. 837.  New York Insurance Law § 55-a created a new basis for recovery by beneficiaries that did not previously exist, but this is not the case with the 2005 CPLR § 5026(a) amendment because a homestead exemption already existed -- only the exempt amount changed.

The Court finds that the 2005 CPLR 5206(a) amendment did not impair a vested right. As illustrated by *Robinson v. Wiley*, 15 N.Y. 489, 494 (1857), New York has regulated homestead exemptions and the contractual relationship between debtors and creditors for a long time.  New York has often changed the dollar amounts of its exemptions, which impact debtors' and creditors' contractual relationships.  Creditors must anticipate the possibility of periodic adjustments to the exemptions statute.  *See In re Larson*, 260 B.R. at 200 (finding that the creditors did not have a vested right in the collateral subject to the prior exemption statute because (1) their "right" to the continuation of the Colorado exemption statute in effect at the time the loans were entered into by the parties was dependent upon and subject to the Colorado exemption statute, and (2) this "right" did not have an independent basis under which it was acquired -- it was wholly dependent upon the statute itself); *In re Punke*, 68 B.R. 936, 940-41 (Bankr. N.D. Iowa 1987) (holding that because of the history of the Iowa exemptions statute, the court was not persuaded that secured creditors should not have anticipated the possibility of further periodic adjustments to the exemptions statute).  *See also In re Bartlett*, 168 B.R. at 499 (declaring that nothing in the record indicates that these creditors could not have moved to exercise their rights under their judicial liens prior to the enactment or effective date of the increased exemption amount).  It is true that the 1977 CPLR 5206(a) amendment provided that it would not have retroactive effect, but creditors should not have relied on that amendment's lack of retroactivity

25

as meaning that all future exemption amendments would only have prospective effect as well.

The Court also finds that the retroactive implementation of the 2005 amendment to CPLR § 5206(a) does not violate the U.S. Constitution's Contract Clause. The Contract Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. The Supreme Court commented that "[a]lthough the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people." *Energy Reserves*, 459 U.S. at 410. The Second Circuit employs a three-part test to determine whether a state law violates the Contract Clause: (1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and, if such a public purpose is demonstrated; and (3) whether the means chosen to accomplish this purpose are reasonable and appropriate. *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 52-53 (2d Cir. 1998); *Sanitation & Recycling Industry, Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).

This test first requires the Court to decide whether the 2005 amendment to CPLR § 5206(a) constitutes a substantial impairment of the contractual relationship between the Debtors and their creditors. While the 2005 amendment modified the expectations of the parties, the Court does not find that the amendment substantially impaired their contractual relationship. *See In re Larson*, 260 B.R. at 203 (holding that an $8,000 exemption increase and a $20,000 exemption increase did not substantially impair the contractual relationship); *In re Hockinson*, 60 B.R. 250, 254-55 (Bankr. N.D. Ill. 1986) (holding that $5,000 exemption increase did not substantially impair the contractual relationship).

26

Even if the 2005 amendment to CPLR § 5206(a) could be found to impair Morse Chain's

contractual interests with the Debtors, the New York Legislature enacted the amendment for a

significant public purpose.  The New York State Senate Introducer's Memorandum in Support

of the Senate Bill increasing the homestead exemption to $50,000 (Senate Bill Number S4582)

justified the amendment's enactment with the following:

> The idea of the homestead exemption to civil judgments seems to have been that
> no civil judgment against any person should result in that person forfeiting his or
> her having a right to a place to live. To that end, Chapter 181 of the Laws of 1977
> made the value of a person's homestead up to $10,000 exempt from civil
> judgments against that person.

> Later on, Section 292 of the Debtor and Creditor Law extended this exemption to
> assessments of the value of a person's estate when Bankruptcy is declared. When
> laws mention specific dollar amounts, it is prudent to periodically review and
> update those amounts.

> Current law sets the homestead exemptions at $10,000. That amount was set when
> the exemption was first enacted in 1977, and has not been updated since. In 1998,
> the value of that amount of money had declined to about $3570 in 1977 dollars.

> This bill proposes to increase the homestead exemption to $50,000, a much more
> realistic figure. The current amount, which is 22 years old, is not at all realistic in
> today's economy. To have the figure so low is tantamount to having no exemption
> at all.

The Court finds that the 2005 amendment serves a significant public purpose because inflation

had obstructed the exemption's purpose, which is to allow debtors to keep their homes, to give

hope to unfortunate debtors, to enable debtors to be productive members of society, to enhance

human dignity, and to avoid increased public assistance expense.  *See Robinson*, 15 N.Y. at 494.

*See also Eldridge v. Commercial Credit Corp.* (*In re Eldridge*), 22 B.R. 218, 222 (Bankr. Me.

1982).

If the legislative purpose of the statute is valid, the final inquiry is whether the means

27

chosen to achieve those purposes are reasonable and necessary. *Tinnerello*, 141 F.3d at 54. The Court must accord substantial deference to the State's conclusion that its approach reasonably promotes the statute's purpose. *See id.* The Court, thus, finds that raising the exemption amount to $50,000 is a reasonable means to ensure that debtors may keep their homes. In determining that the retroactive implementation of an exemption does not violate the Contract Clause, the Court is in accord with several other federal bankruptcy courts. *See, e.g., In re Larson*, 260 B.R. at 203; *In re Punke*, 68 B.R. at 940-41 (Bankr. N.D. Iowa 1987); *In re Hockinson*, 60 B.R. at 254-55; *In re Barnhart*, 47 B.R. 277, 282-83 (Bankr. N.D. Tex. 1985), *In re Eldridge*, 22 B.R. at 221-22. *But see In re Echavarren*, 2 B.R. 215, 217 (Bankr. D. Idaho 1980) (holding that a homestead exemption increase does not per se impair the obligation of contracts, if it was a reasonable one and in furtherance of a valid social, economic, or protective function of the State, but an increase from $10,000 to $25,000 cannot be considered reasonable when given a retroactive application to creditors who advanced credit under the pre-amendment exemption).

The Court, thus, finds that under state law, CPLR § 5206(a) operates retroactively. However, the Court must determine whether CPLR § 5206(a) has a different effect in bankruptcy. The Court holds that it does not. Code § 522(b)(2) requires the Court to apply the law that is applicable on the Debtors' filing date. The law that is applicable is the 2005 amendment to CPLR § 5206, which the Court has found is retroactive. The Debtor Barbara Little, therefore, may claim the $20,000 homestead exemption for all the debt incurred, regardless of whether she incurred the debt before or after the 2005 amendment date.

The Court also agrees with Judge Wedoff's statement that "§ 522(b) reflected a compromise between conflicting legislative provisions, with the apparent intent of allowing states

to retain wide discretion over the exemptions applicable in bankruptcy." *In re Fishman*, 241 B.R. at 573. Under § 522(b), states can choose to opt out of the federal exemption scheme and provide no exemptions at all to debtors. *Owen,* 500 U.S. at 307. The bankruptcy court in *In re Betz*, 273 B.R. at 324, stated that "[f]ederal law trumps state law where it conflicts with policies of the federal law," but federal law does not prevent Massachusetts from having a $300,000 homestead exemption and New York from having a $50,000 homestead exemption. States, thus, have wide discretion over the exemptions applicable in bankruptcy. *In re Fishman*, 241 B.R. at 573 (citing *In re Ondras*, 846 F.2d at 35). Here, New York law determines the initial availability of exemptions. *See In re Duda*, 182 B.R. at 670. The Court agrees with the reasoning of *In re Duda*, but its judgment differs from that case because the Court finds that New York law permits an amendment to a homestead exemption to have retroactive effect, while the court in *In re Duda* found that the legislative intent of the Connecticut statute was that it would only have prospective effect. In *In re Duda*, 182 B.R. at 664, the Connecticut statute provided that the act "shall take effect October 1, 1993, and shall be applicable to any claim arising on or after said date." The Connecticut statute made no mention of its retroactive effect, but a statement on the House floor by the statute's sponsor indicated that the legislator's intent was that the Act would not be retroactive. *See id.* at 668. Furthermore, the Connecticut statute did not just increase an existing exemption, it created a homestead exemption for the first time. *Id.* at 669. These factors resulted in the differing judgments of this Court and the court in *In re Duda.*

The Debtors also contend that once the federal government establishes an exemption amount, Code § 522(b) cannot be used to allow the States to establish an exemption amount less than the federal standard because it interferes with the Code's aim of giving a debtor a fresh start.

29

However, the Debtors do not cite any case law supporting this contention, and the Supreme Court

has held that nothing in §522(b) limits a state's power to restrict the scope of its exemptions, and

a state could accord no exemptions at all, if it wishes.  *Owen*, 500 U.S. at 307.  Furthermore, §

522(b)(1) provides that the § 522(d) exemptions are not available if the state law "specifically

does not so authorize."  NYD & CL § 284 provides that debtors domiciled in New York are not

authorized to exempt from the bankruptcy estate property that is specified under Code § 522(d).

Debtors domiciled in New York can thus only use New York's state exemptions.

    For the reasons stated herein, the Court rejects Morse Chain's Code § 1325(a)(4)

objection.

        IT IS SO ORDERED.


Dated at Utica, New York

this 24th day of April 2006




                        /s/    Hon. Stephen D. Gerling
                        STEPHEN D. GERLING
                        Chief U.S. Bankruptcy Judge